## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JAMES RIVER INSURANCE CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-CV-0151-CVE-FHM** |
| | ) | |
| **BLUE OX DANCE HALL, LLC d/b/a** | ) | |
| **Legend's Dance Hall & Saloon, LLC et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff James River Insurance Co.'s Motion for Partial Summary Judgment and Brief in Support (Dkt. # 52). James River Insurance Co. (James River) issued a commercial general liability policy to Blue Ox Dance Hall, LLC d/b/a Legend's Dance Hall & Saloon, LLC (Blue Ox), and the policy contains a limitation on coverage as to claims against Blue Ox arising out of assault and battery committed by Blue Ox's employees. James River argues that several lawsuits filed against Blue Ox by patrons alleging that they were assaulted by employees of Blue Ox are subject to the assault and battery limitation.

## I.

On October 25, 2013, James River issued a liquor liability and commercial general liability policy to Blue Ox, with an effective date of October 25, 2013 to October 25, 2014. Dkt. # 52-1, at 1. The policy provides coverage for up to $1 million per occurrence and a $2 million aggregate limit. Id. at 3. The words "you" and "your" are used to refer to the Named Insured throughout the policy, and the policy provides the following description of who is considered an insured for a limited liability company such as Blue Ox:

1. If you are designated in the Declaration as:

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Id. at 14. In addition, "[a]ny organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership . . . will qualify as a Named Insured if there is no other similar insurance available to that organization." Id. at 15. Under the policy, James River agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at 6. James River's duty to defend ends as to covered claims "when we have used up the applicable limit of insurance in the payment of judgments or settlements . . . ." Id. The policy also states that James River has no duty to defend when there is no coverage under the policy. Id. at 52.

The policy contains an Assault and Battery Limits of Liability Endorsement (A&B Endorsement) significantly limiting coverage for claims of bodily injury or property damage "arising out of or in connection with" any of the following acts:

   1. Assault or battery, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of you, any insured, any person, or any causes whatsoever;

   2. The failure by you, any insured or any person to suppress or prevent an assault or battery;

   3. The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to assault or battery;

   4. The negligent employment, investigation, hiring, supervision, training, or retention of any person;

5. The use of any force to protect persons or property whether or not the "bodily injury," "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of the insured;

6. The failure to render or secure medical treatment or care necessitated by any assault or battery.

Id. at 41. "Assault" includes "any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of" the Named Insured. Id. Battery is defined as "any harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of You, any insured, any person, or any causes whatsoever." Id. The endorsement limits coverage for acts of assault and battery to $25,000 per occurrence and $50,000 in the aggregate. Id. The A&B Endorsement also contains a "Limits of Insurance" provision stating that any "claims expense" incurred by James River in investigating or adjusting a claim falling under the endorsement shall be applied to the $25,000 or $50,000 limitation. The Limits of Insurance "fix the most [James River] will pay regardless of the number of . . . Claims made or 'suits' brought . . . ." Id. at 15.

Michael Sanchez and John Jeffrey Peterson, Jr. filed a lawsuit in Tulsa County District Court alleging that they suffered personal injuries when they were removed from a bar operated by Blue Ox. Dkt. # 52-3. Sanchez and Peterson allege that John Sebastian Hoffman and Joshua Adolph Hanke "severely assaulted and injured them." Id. at 2. They also allege that Jesse Paul Triplett, Jason Donovan Jensen, and Fred James Crapse, III were working as bouncers on September 6, 2014 when they negligently removed Sanchez and Peterson from the bar. Id. The plaintiffs claim that Blue Ox acted negligently by hiring untrained bouncers, and they also claim that Blue Ox failed to properly train or supervise its employees concerning the use of force. Id. at 2-3. In a second

amended petition, Sanchez and Peterson assert negligence claims against Triplett, Crapse, Jensen, and Blue Ox, a civil assault claim against Blue Ox, Hoffman, and Hanke, a civil battery claim against Blue Ox, Hoffman, and Hanke, and an intentional infliction of emotional distress claim against Blue Ox, Hoffman, and Hanke. Id. at 4-6. The second amended petition contains no specific factual allegations describing the incident giving rise to the lawsuit. Sanchez and Peterson seek compensatory damages in excess of $75,000 and punitive damages. However, they have submitted affidavits in response to James River's motion for partial summary judgment and they provide a description of the incident in which they were allegedly injured.

A second lawsuit was filed in Tulsa County District Court by Johnny Dale Croney, II against Blue Ox, Blue Ox Dining LLC, Blue Ox Dining Group LLC, and five unidentified bouncers alleging claims of assault and battery. Croney claims that he was choked and rendered unconscious by employees of Blue Ox at about 1:00 a.m. on March 15, 2014. Dkt. # 52-4, at 1. Croney also alleges that Blue Ox negligently supervised its employees and that Blue Ox is liable for the negligence of its employees who were acting within the scope of their employment. Id. at 3. Croney seeks compensatory and punitive damages.

In a third lawsuit, John Philip Hughes alleges that he was physically assaulted by bouncers at Blue Ox early in the morning on July 13, 2014. Dkt. # 52-5, at 2. Hughes filed a second amended petition alleging claims of negligence, civil assault, civil battery, and intentional infliction of emotional distress against Blue Ox, Blue Ox Dining, LLC, Blue Ox Dining Group, LLC, Crapse, Jensen, Hanke, Hoffman, Triplett, Thomas Cordova, and Cody Hildebrant. Hughes claims that the individual defendants were negligent by failing to exercise reasonable care when removing him from

the bar, and he alleges that Blue Ox and the other corporate defendants failed to properly train and supervise their employees.  Id. at 3-4.

James River filed this case seeking a declaratory judgment concerning its duty to defend and indemnify Blue Ox, Blue Ox Dining LLC, and Blue Ox Dining Group LLC against the claims made in the three state court lawsuits.  The key issue disputed by the parties is whether the A&B Endorsement applies to the claims alleged in the state court lawsuits.  Also related to the A&B Endorsement, James River argues that the $50,000 aggregate limit applies to the Sanchez/Peterson, Croney, and Hughes lawsuits and that defense costs can be counted toward the $50,000 aggregate policy limit.[1]  James River seeks a declaratory judgment that it has no duty to defend or indemnify Blue Ox Dining LLC and Blue Ox Dining Group LLC and that the policy provides no coverage as to punitive damages.[2]  Sanchez and Peterson have filed a response arguing that the A&B Endorsement does not apply to their claims of "true negligence" against Triplett, Jensen, and Crapse, and they ask the Court abstain from hearing this case due their pending state court lawsuit.  Dkt. #

---

[1]     There is no dispute that the acts alleged by the state court plaintiffs occurred between October 25, 2013 and October 25, 2014, and the applicable aggregate limit in the insurance policy will apply to all of the claims against Blue Ox.

[2]     None of the defendants has responded to James River's arguments that Blue Ox Dining LLC and Blue Ox Dining Group LLC are not covered under the policy or that punitive damages are excluded from coverage.  The policy specifically states that an "organization other than a . . . limited liability company" that is formed by a named insured can be covered, and Blue Ox Dining LLC and Blue Ox Dining Group LLC are clearly excluded as named insureds due to their status as limited liability companies.  Dkt. # 52-1, at 14.  The policy also has a damages limitation that excludes coverage for "awards arising from acts or omissions deemed uninsurable by law . . . ."  Id. at 52.  As a matter of Oklahoma law, an insured may not ordinarily obtain coverage for punitive damages, because this would allow a culpable party to escape punishment for his wrongs and shift the burden to the premium payers of an insurance company.  Boggs v. Great Northern Ins. Co., 659 F. Supp. 2d 1199, 1209 n.7 (N.D. Okla. 2009); Dayton Hudson Corp. v. American Mut. Liab. Ins., 621 P.2d 1155 (Okla. 1980).

74. Sanchez and Peterson also argue that "claims expenses" cannot be considered when determining if James River has paid up to its limits of liability. Blue Ox argues that the inclusion of "claims expenses" within the limits of liability violates Oklahoma law. Dkt. # 76. However, there are no objections to any other issue raised by James River. Defendants Croney, Hughes, Triplett, Hoffman, Jensesn, Crapse, and Cordova have not appeared in this case, and the Court has entered default judgment against them. Dkt. # 89.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

6

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

James River has filed a motion for partial summary judgment raising six issues, but only two of those issues are contested by the defendants. Blue Ox argues that the inclusion of "claims expenses" in determining the limits of James River's liability under the A&B Endorsement violates Oklahoma law. Dkt. # 76, at 2. Sanchez and Peterson argue that the A&B Endorsement does not apply to their "true negligence" claims relating to their removal from the premises. Dkt. # 74. They also ask the Court to abstain from hearing James River's claim for declaratory judgment, because similar factual issues will be decided in their state court lawsuit. Id. at 25-27.

### A.

The Court will initially consider whether the A&B Endorsement applies to the claims alleged by Sanchez and Patterson in their state court lawsuit. Sanchez and Patterson have alleged claims of assault and battery against Hoffman and Hanke, but they have alleged negligence claims against Triplett, Crapse, and Jensen due to "negligence in removing" Sanchez and Peterson from the premises. Dkt. # 52-3, at 3-5. James River argues that the A&B Endorsement is broad enough to encompass claims of negligence arising out of the use of force to remove Sanchez and Peterson from Blue Ox's premises. Dkt. # 52, at 18-21; Dkt. # 80, at 3-4.

This is a diversity case requiring the Court to construe disputed terms of an insurance policy as required by state law. See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation, 529 F.3d 916, 920 (10th Cir. 2008); Houston General Ins. Co. v. American Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)).

James River does not dispute that Blue Ox has some coverage for the claims alleged in the state court lawsuits, but it contends that the policy contains a limitation as to the amount of coverage and that some exclusions to coverage apply as to entities other than Blue Ox. "A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred,

while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Pitman v. Blue Cross & Blue Shield of Oklahoma, 217 F.3d 1291, 1298 (10th Cir. 2000); see also Security Mut. Life Ins. Co. v. Hollingsworth, 459 P.2d 592 (Okla. 1969). The A&B Endorsement is a limitation, rather than an outright exclusion, but the Court will place the burden on James River to show that the A&B Endorsement applies to the claims alleged in the state court lawsuits.

Sanchez and Peterson do not argue that the A&B Endorsement is ambiguous but, instead, argue that claims of "true negligence" do not fall within the scope of the A&B Endorsement. In support of this argument, they have offered a more complete version of the alleged incident giving rise to their claims. Sanchez and Peterson allege that they were patrons of the Legends Dance Hall on September 6, 2014, and several bouncers asked them to leave immediately. Dkt. # 74-2, at 1. They asked if they could finish their drinks and Sanchez was pushed to the ground by Triplett. Id. Sanchez claims that Triplett started choking him while Hoffman punched him in the head. Id. Triplett dragged Sanchez by the arms and removed him from the bar. Id. Peterson claims that he attempted to intervene and was placed in a chokehold by another bouncer, and he claims that he "struggled to maintain consciousness" as he was walked toward the exit. Dkt. # 74-4, at 1. Jensen grabbed Peterson's legs and Peterson was carried to the door, and he claims that he was left on the ground outside of the Legends Dance Hall. Id. Sanchez and Peterson filed a lawsuit in Tulsa County District Court. In a second amended petition, they have alleged claims of civil assault, civil battery, and intentional infliction of emotional distress against Hoffman and Hanke and negligence claims against Triplett, Crapse, and Jensen. Dkt. # 52-3, at 3-6.

The Court will rely on the facts stated by Sanchez and Patterson in determining whether any of the claims they have asserted against Blue Ox fall within the scope of the A&B Endorsement.[3] Sanchez and Peterson argue that they have alleged claims of negligence against Triplett, Crapse, and Jensen that are separate and distinct from the assault and battery claims against Hoffman and Hanke. However, the insurance policy at issue does not define assault and battery in terms of Oklahoma law, and it is irrelevant how Sanchez and Peterson have pled their claims in state court. Instead, the Court must focus on the relevant language in the insurance policy. The policy defines assault and battery as follows:

> Assault includes, but is not limited to, assault, sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, and any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of You, any insured, any person, or any causes whatsoever.

> Battery includes, but is not limited to, battery, sexual abuse, sexual battery, sexual molestation, and any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of or negligence of You, any insured, any person, or any causes whatsoever.

Dkt. # 52-1, at 41. The policy treats any "threatened harmful or offensive contact" as assault and any "harmful or offensive contact" as battery, regardless of whether the contact could be treated as negligent conduct as a matter of state law. Sanchez and Peterson attempt to distinguish between an assault and battery committed by Hanke and Hoffman and their claims of "true negligence" arising out of their subsequent removal from the Legends Dance Hall. Construing the facts in a light most

---

[3] The Court notes that the facts stated in Sanchez' and Peterson's response were not stated in their second amended petition, and it is not clear if the insured provided this information to James River. However, the Court will assume for the purpose of this Opinion and Order that the information was conveyed to James River before it filed this case.

favorable to Sanchez and Peterson, it appears that the entire incident arose when they were asked to leave the Legends Dance Hall and there was no separation between the alleged initial assault and battery and subsequent removal from the premises. Both Sanchez and Peterson allege that Triplett, Crapse, and Jensen used force to remove them from the premises and there is no dispute that the force used could be classified as "harmful or offensive contact." All of the claims alleged by Sanchez and Peterson fall within the scope of the assault and battery waiver, even though Sanchez and Patterson have alleged their claims against Triplett, Crapse, and Jensen in terms of negligence instead of assault and battery.[4]

### B.

Blue Ox, Sanchez, and Peterson object to James River's assertion that defense costs can be considered in determining the limits of liability under the insurance policy. Sanchez and Peterson argue that the general "limits of insurance" provision does not include defense costs as funds that are considered in determining whether the aggregate limit of the policy has been reached. Dkt. # 74, at 16. Sanchez and Peterson are correct that James River agreed "to pay those sums that the insured becomes legally obligated to pay as damages" and that James River generally has a separate duty to defend. Dkt. # 52-1, at 11. However, the general provision is modified by the A&B Endorsement, which provides that "[a]ny 'claims expense' arising from any claim or 'suit' to which this endorsement applies and incurred by us shall be included within the Limits of Insurance . . . and shall not be in addition to such Limits of Insurance." Id. at 42. "Claims expense" includes the costs of "investigations, adjustment and legal expenses, interests, and fees . . . ." Id. Sanchez and

---

[4] Blue Ox has not argued on its own behalf that the claims of Sanchez and Peterson are outside the scope of the A&B Endorsement, but this ruling is equally applicable to Blue Ox.

Peterson ignore this more specific language concerning "claims expenses" that is contained in the A&B Endorsement, but the A&B Endorsement clearly includes "claims expenses" as costs that are included within the limits of liability.

Blue Ox argues that the A&B Endorsement is unenforceable to the extent that "claims expenses" are considered part of the limits of liability, because the Oklahoma Insurance Commission has issued a regulation specifically prohibiting the inclusion of defense costs in the limits of liability. Dkt. # 76. Blue Ox cites Oklahoma Administrative Code § 365:15-1-15, which provides that:

> No insurance policy or contract shall be made, issued or delivered by any insurer or by any agent or representative thereof, that includes defense expenses within the limit of liability. The Insurance Commissioner may waive this requirement based upon factors such as noncompetitive market or type of insurance coverage. If the Insurance Commissioner waives this requirement, the Declarations page of the policy shall include a conspicuous notice indicating that the contract contains defense expenses within the limit of liability and advising the policy holder to read its provisions.

Blue Ox argues that the Insurance Commissioner has issued two waivers to this regulation, and one of these waivers is applicable to general commercial liability policies. Dkt. # 76, at 5. However, the order applicable to general commercial liability policies includes four requirements that must be met in order to qualify for the waiver, and the insurance policy in this case does not meet any of the four requirements. Id. at 5-6. James River responds that it is a surplus lines insurer and it is not licensed to sell insurance in Oklahoma, and the prohibition on issuing policies that contain a "defense within limits" provision does not apply to James River. Dkt. # 81.

The Court has reviewed the parties' briefing and finds that the issue of James River's status as a surplus lines insurer was not adequately raised in its motion for partial summary judgment. In its motion, James River argues that the A&B Endorsement includes defense costs as part of the $50,000 aggregate policy limit for claims falling within the A&B Endorsement, but James River

does not argue that such limitations are generally enforceable under Oklahoma law.  Dkt. # 52, at

23.  Blue Ox cites an Oklahoma insurance regulation that clearly limits when defense costs may be

included in an insurance policy that is "made, issued or delivered by any insurer or by any agent"

in the state of Oklahoma.  Oklahoma Administrative Code § 365:15-1-15.  At a minimum, there is

an issue as to whether the policy at issue in this case was "made, issued or delivered" in this state.

James River argues that surplus lines insurers are generally exempt from Oklahoma regulatory

requirements, but it did not even mention in its motion that it is a surplus lines insurer.  The Court

finds that it would be more appropriate to rule on this legal issue when all parties have had an

opportunity to respond to the argument raised by James River.  The Court also notes that James

River does not cite a single decision by an Oklahoma appellate court in support of its argument, the

statutory law cited by James River does not clearly compel a decision in its favor, and the issue has

not been adequately briefed by James River.  The Court finds that James River's motion for partial

summary judgment should be preliminarily denied as to its argument that defense costs can be

considered as part of the limits of insurance for claims falling within the A&B Endorsement,

because James River failed to adequately set forth the legal basis for this argument in its motion.

However, if James River believes that a ruling on this issue is necessary, the Court will allow a

second motion for summary judgment, in which James River fully sets forth the factual and legal

basis for this argument.  See LCvR 56.1(a).

## C.

Sanchez and Peterson ask the Court to abstain from hearing this case, because there is a

pending state court lawsuit involving many of the same factual and legal issues that will be decided

by this Court.  Dkt. # 74, at 25-27.  James River responds that federal courts typically exercise their

discretion to hear declaratory judgment actions involving insurance coverage disputes, and it argues that there is no reason from the Court to abstain from this case. Dkt. # 80, at 9.

When a federal court plaintiff requests declaratory relief, abstention is governed by the discretionary standard of Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942), not the extraordinary circumstances test of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). Wilton v. Seven Falls Co., 515 U.S. 277 (1995). The Brillhart standard is much less stringent than the Colorado River test, and Brillhart grants a court much more discretion than Colorado River. United States v. City of Las Cruces, 289 F.3d 1170, 1182-83 (10th Cir. 2002). The Tenth Circuit has outlined five factors to guide district courts in exercising their discretion to hear a declaratory judgment action if there is a similar state court lawsuit pending:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) (quoting Allstate Ins. Co. v. Green, 825 F.2d 1061, 1063 (6th Cir. 1987)). Under this test, the degree of similarity between the state and federal court cases is a factor in the court's decision but, unlike in Colorado River, a stay could be appropriate in some circumstances when two cases are not parallel proceedings. City of Las Cruces, 289 F.3d at 1182-83.

In Mhoon, the Tenth Circuit upheld a declaratory judgment in favor of an insurer even thought there was a related lawsuit pending in state court. In Mhoon, Robert Mhoon and Takuro Fujiwara had an argument that ended when Mhoon shot Fujiwara. Mhoon, 31 F.3d at 981. This resulted in three legal actions against Mhoon, including a civil action in state court brought by

Fujiwara against Mhoon. Mhoon's insurer, State Farm Fire and Casualty Company (State Farm), agreed to defend him but reserved its right to contest coverage. Id. at 982. While the civil case was pending, State Farm initiated a declaratory judgment action against Mhoon to determine insurance coverage issues related to the state court lawsuit. Id. The district court entered a declaratory judgment in favor of State Farm and found that State Farm did not have a duty to defend or indemnify Mhoon against Fujiwara's claims. Id. Mhoon appealed on the basis that the district court should have stayed the declaratory judgment action until the related state court lawsuit was completed. Id. The Tenth Circuit affirmed the district court's entry of declaratory judgment, finding that State Farm's declaratory judgment action did not interfere with an ongoing state court case. The Tenth Circuit found that there was a "substantial interest in deciding [coverage] issues without undue delay, particularly the question of the duty to defend." Id. at 984. Although the district court had to review the state court complaint to determine if State Farm had a duty to defend, the court's coverage determination did not require the district court to rule on any factual or legal issues before the state court. Id. The district court did not abuse its discretion by entering judgment on State Farm's claim for declaratory judgment. Id.

Sanchez and Peterson do not address the Mhoon factors, but the Court must consider these factors in ruling on their request to abstain. The first Mhoon factor does not support abstention, because a declaratory judgment would fully settle the controversy between James River and defendants. Sanchez and Peterson argue that the central issue is the negligence of Triplett, Crapse, and Jensen, and this issue will be decided in the state court action. Dkt. # 74, at 27. However, the primary issue in this case is whether the A&B Endorsement limits the amount for which James River must indemnify Blue Ox, and this will not be affected by any finding by the state court as to the

negligence of Triplett, Crapsse, and Jensen. As to the second <u>Mhoon</u> factor, a ruling by this Court as to the rights and obligations of the parties will fully dispose of the parties' dispute as to insurance coverage for the claims against Blue Ox. The third <u>Mhoon</u> factor (procedural fencing) is not relevant to this case. There is no evidence of "procedural fencing" or a race to the courthouse, because the state court lawsuit filed by Sanchez and Peterson concerns separate claims and legal issues from this lawsuit. The fourth <u>Mhoon</u> factor (friction between state and federal courts) does not favor abstention. James River is not a party to the state court lawsuit and it has a substantial interest in having issues of insurance coverage, particularly as to its duty defend and what costs are part of the limits of liability, decided before the state court lawsuit filed by Sanchez and Peterson is resolved. The Court also notes that federal courts typically hear declaratory judgment actions concerning insurance disputes, even though insurance is typically a matter of state law, and it does not inherently cause friction between state and federal courts when insurance disputes are resolved in federal court. Finally, Sanchez and Peterson have not identified an alternative remedy that would be better or more effective for James River than a declaratory judgment action. Sanchez and Peterson argue that James River could seek to intervene in their state court lawsuit, but they have not undertaken any analysis as to whether such a request for intervention would be appropriate under Oklahoma procedural law. Dkt. # 74, at 27. The Court will not supply such an analysis for Sanchez and Peterson, and takes no position as to whether James River could intervene in the state court lawsuit filed by Sanchez and Peterson. The Court has considered all of the <u>Mhoon</u> factors, and finds that Sanchez and Peterson's request for the Court to abstain from hearing this case should be denied.

**IT IS THEREFORE ORDERED** that Plaintiff James River Insurance Co.'s Motion for Partial Summary Judgment and Brief in Support (Dkt. # 52) is **granted in part and denied in part**: the motion is preliminarily denied as to the inclusion of defense costs within the limits of insurance and the motion is granted in all other respects.

**IT IS FURTHER ORDERED** that the parties shall submit a joint status report concerning what issues remain for adjudication and proposed deadlines for an amended scheduling order no later than **June 14, 2017**.

**DATED** this 31st day of May, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE