# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| JAMES RIVER INSURANCE CO., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 16-CV-0151-CVE-FHM |
| BLUE OX DANCE HALL, LLC d/b/a Legend's Dance Hall & Saloon, LLC et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Plaintiff James River Insurance Co.'s Second Motion for Partial Summary Judgment and Brief in Support (Dkt. #101). In a prior opinion and order (Dkt. # 98), the Court found that claims alleged in state court against Blue Ox Dance Hall, LLC (Blue Ox) by defendants Michael Sanchez, John Jeffrey Peterson, Jr., Johnny Dale Croney, II, and John Phillip Hughes fell within an Assault and Battery Endorsement (A & B Endorsement) to an insurance policy issued by James River Insurance Co. (James River) to Blue Ox. The Court authorized James River to file a second motion for summary judgment on the issue of whether claims expenses could be considered in determining whether the limits of insurance had been paid to the insured. James River has filed a second motion for summary judgment and the motion is fully briefed.

## I.

On October 25, 2013, James River issued a liquor liability and general commercial liability insurance policy to Blue Ox, which was in effect from October 25, 2013 to October 25, 2014. Dkt. # 101-1, at 1, 3. The policy has a $1 million aggregate limit for claims under the liquor liability provisions and an aggregate limit of $2 million for claims falling within the general commercial liability section of the policy. Id. However, an A & B Endorsement is attached to the policy which

significantly limits the policy limits as to liquor liability and general commercial liability for acts of assault or battery. Id. at 41-42. The A & B Endorsement limits coverage to $25,000 per occurrence and $50,000 in the aggregate for claims caused by acts of assault or battery. Id. at 41. The policy also includes the following provision further limiting payments to the insured under the A & B Endorsement:

> Any "claims expense" arising from any claim of "suit" to which this endorsement applies and incurred by us shall be included within the Limits of Insurance in the above SCHEDULE and shall not be paid in addition to such Limits of Insurance. Our duty to defend any claim or "suit" or to pay any settlement or judgment of defense costs ends after we have paid our applicable Limits of Insurance as forth in the above SCHEDULE. All "claims expense" shall first by subtracted from the Limits of Insurance with the remainder, if any, being the amount available to pay damages. If the applicable Limit of Insurance is exhausted by the payment of settlements, judgments, awards and/or defense costs prior to final settlement, judgment or award, we shall have the right to withdraw from any further defense by tendering control of the defense of the "suit" to you. . . .

Id. at 42. The term "claims expense" includes "investigations, adjustment and legal expenses, interests and fees, including court costs and premiums on bond." Id. This type of provision allowing an insurer to deduct claims expenses from the limits of insurance is known as a defense within limits provision.

Blue Ox was named as a defendant in three separate lawsuits filed in Tulsa County District Court arising out of incidents in which physical force was used against patrons of Blue Ox. James River filed this case seeking, inter alia, a declaratory judgment that the A & B Endorsement applied to the claims against Blue Ox, and James River sought a ruling that claims expenses should be deducted from the limits of insurance. James River filed a motion for summary judgment, and defendants Blue Ox, Michael Sanchez, and John Jeffrey Peterson, Jr. filed responses. The Court entered an opinion and order (Dkt. # 98) finding that the claims against Blue Ox fell within the scope

2

of the A & B Endorsement. However, the Court found that it could not rule on the issue of whether claims expenses could be deducted from the limits of insurance, because James River raised an issue in its reply to which defendants were entitled to an opportunity to respond. Dkt. # 98, at 13.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

3

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

James River argues that the A & B Endorsement expressly allows it to deduct claims expenses from the limits of insurance, and that the legal authority cited by defendants suggesting that a defense within limits provision is unenforceable does not apply to a surplus lines insurer. Dkt. # 101. Defendants Sanchez and Peterson argue that the defense within limits provision of the A & B endorsement is unenforceable under Oklahoma Administrative Code (OAC) § 365:15-1-15. Dkt. # 105. Blue Ox also asserts that the defense within limits is unenforceable, and it further argues that the Oklahoma Insurance Commissioner has not granted a waiver to surplus lines insurers that would exempt James River from compliance with § 365:15-1-15. Dkt. # 104.

This is a diversity case requiring the Court to construe disputed terms of an insurance policy as required by state law. See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation, 529 F.3d 916, 920 (10th Cir. 2008); Houston General Ins. Co. v. American Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A

4

court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)).

The parties do not dispute that the A & B Endorsement contains a defense within limits provisions allowing James River to deduct claims expenses from the limits of insurance owed to its insured, and defendants do not argue that the defense within limits provision is ambiguous. The Court has reviewed the defense within limits provision, and it clearly permits James River to include claims expenses within the limits of insurance. Dkt. # 101-1, at 42. The issue raised by defendants is whether the defense within limits provision is enforceable as a matter of Oklahoma law. Defendants cite OAC § 365: 15-1-15, which states:

> No insurance policy or contract shall be made, issued or delivered by any insurer or by any agent or representative thereof, that includes defense expenses within the limit of liability. The Insurance Commissioner may waive this requirement based upon factors such as noncompetitive market or type of insurance coverage. If the Insurance Commissioner waives this requirement, the Declarations page of the policy shall include a conspicuous notice indicating that the contract contains defense expenses within the limit of liability and advising the policyholder to read its contents.

This regulation is included in a section of the OAC governing property and casualty insurance, and the Oklahoma Insurance Commissioner has issued a bulletin to "[a]ll Property and Casualty Insurers Licensed in the State of Oklahoma" concerning enforcement of this regulation. See OK Bulletin PC

2011-01, 2011 WL 1158377. Blue Ox has also submitted copies of two waivers issued by the Oklahoma Insurance Commissioner allowing certain types of insurance policies to include a defense within limits provision, and the waivers are directed to "ALL PROPERTY AND CASUALTY INSURERS LICENSED IN THE STATE OF OKLAHOMA." Dkt. # 104-2; Dkt. # 104-3. In a section entitled "Other Licenses," there is a regulation concerning the issuance of a policy from a surplus lines insurer. OAC § 365:25-3-13.

Under Oklahoma law, an insurance agent or broker is generally required to obtain insurance coverage for an insured from an insurer that is an "admitted insurer." An "admitted insurer" is defined as "an insurer that is licensed to transact the business of insurance" in Oklahoma. OKLA. STAT. tit. 36, § 1100.1. However, certain types of insurance may be unavailable from an admitted insurer, and in such cases a broker may place coverage with a nonadmitted insurer or a surplus lines insurer. OKLA. STAT. tit. 36, § 1108. "Surplus lines insurance" is defined as " insurance procured by a nonadmitted licensee or broker from a surplus lines insurer . . . ." OKLA. STAT. tit. 36, § 1100.1. Under OKLA. STAT. tit. 36, § 1109, "[i]nsurance contracts procured as surplus lines coverage from surplus lines insurers in accordance with this article shall be fully valid and enforceable as to all parties, and shall be given recognition in all matters and respects to the same effect as like contracts issued by admitted insurers." Surplus lines coverage ordinarily involves the issuance of a policy for a risk that admitted insurers are unwilling to cover, and "surplus lines insurers are relatively free from regulatory requirements otherwise imposed on authorized domestic insurers." Piermount Iron Works, Inc. v. Evanston Ins. Co., 963 A.2d 818, 824 (N.J. 2009). Insurance policies issued by surplus lines insurers are often a last resort for an insurance broker, because risks insured by a surplus lines insurer are considered "substandard" or "unusual" in the

general insurance marketplace. Smith v. Underwriters at Lloyd's of London, 606 A.2d 273, 280-81 (Md. 1992). The United States Government Accountability Office notes that surplus lines insurers fill an important niche in the insurance market by covering otherwise uninsurable risks, and surplus lines insurers require flexibility to modify exclusions and coverages in order to manage unusual risks that admitted insurers deem uninsurable. United States Government Accountability Officer, Property and Casualty Insurance: Effects of the Nonadmitted and Reinsurance Reform Act of 2010, GAO-14-136, Dkt. # 101-6, at 13.

Sanchez and Peterson argue that James River is subject to the same laws and regulations that apply to admitted insurers in Oklahoma. They claim that policies issued by surplus lines insurers are enforceable in the same manner as policies issued by admitted insurers, and they assert that § 1109 also subjects surplus lines insurers to the same requirements and regulations applicable to admitted insurers. Section 1109 states that insurance contracts issued by surplus lines insurers are fully valid and enforceable and shall be given "recognition in all matters and respects to the same effect as like contracts issued by admitted insurers." Sanchez and Peterson state that "[b]ecause the language in this statute gives surplus line insurers the same enforceability and validity as insurers licensed in this State, the same requirements and prohibitions apply." Dkt. # 105, at 4. The Court disagrees with defendants' interpretation of § 1109. The statute speaks to the enforceability of an insurance policy issued by a surplus lines insurer, and a plain reading of the statute supports the proposition that an insurance policy is not less enforceable merely because it was issued by a surplus lines insurer. Defendants seek to go a step further by arguing that § 1109 requires that all regulations applicable to admitted insurers also apply to surplus lines insurers. This goes beyond the plain language of § 1109, and it is not reasonable to equate enforceability of contract with a duty

7

to follow Oklahoma statutes and regulations applicable to admitted insurers. The Court does not find that § 1109 resolves the issue of whether regulations issued by the state of Oklahoma are applicable to surplus lines insurers.

James River argues that OAC § 365:15-1-15 is applicable only to licensed property and casualty insurers, and the regulation does not apply to policies issued by a surplus lines insurer. James River is correct that the regulation is in a section of the OAC applicable only to licensed property and casualty insurers, and subsequent actions by the Oklahoma Insurance Commissioner concerning the interpretation or enforcement of this regulation have been directed to licensed property and casualty insurers. Blue Ox has submitted copies of waivers issued by the Oklahoma Insurance Commissioner, asserting that the orders show that the regulation prohibiting defense within limits provisions applies to all insurers that issue policies in Oklahoma. Dkt. # 104, at 2-5. However, a review of the most recent order supports a conclusion that OAC § 365:15-1-15 does not apply to nonadmitted or surplus lines insurers. The waiver specifically states that it is directed to "ALL PROPERTY AND CASUALTY INSURERS LICENSED IN THE STATE OF OKLAHOMA," Dkt. # 104-2, at 1. The Oklahoma Insurance Department lists James River as an approved surplus lines insurer, and James River is not included on a list of licensed insurers in the state of Oklahoma. See Dkt. # 101-4, at 2. The waiver further states that:

> 1. Due to the nature of risks and/or persons covered by some types of insurance policies, the Insurance Commissioner finds that not allowing an insurer to include defense expenses within the limits for the specific types of insurance policies addressed herein . . . may cause a market availability problem for the persons or risks covered by such insurance policies, *forcing consumers to obtain coverage from non-admitted insurers* . . . .

Id. at 2. There would be no reason for the Oklahoma Insurance Commissioner to distinguish between licensed and nonadmitted insurers if the waiver applied equally to both types of insurers,

and by its own terms the order seeks to enforce the prohibition against defense within limits provisions against licensed property and casualty insurers only. The Court finds that OAC § 365:15-1-15 does not apply to surplus lines insurers such as James River.

The Court finds that the defense within limits provision in the subject insurance policy is enforceable, and James River may deduct claims expenses from the limits of insurance. OAC § 365:15-1-15 applies only to licensed property and casualty insurers, and James River is not a licensed property and casualty insurer. Instead, James River is a surplus lines insurer, and surplus insurers are generally subject to less regulation due to nature of the risks being insured. Defendants have cited no authority other than OAC § 365:15-1-15 and waivers by the Oklahoma Insurance Commissioner concerning this regulation, and the Court has found that OAC § 365:15-1-15 does not apply to James River. The parties have cited no authority suggesting that defense within limits provisions are generally disfavored as a matter of Oklahoma public policy, and the Court has found no decisions by an Oklahoma appellate court supporting a conclusion that defense within limits provisions are disfavored or unenforceable as a matter of Oklahoma law. James River's second motion for summary judgment should be granted, and the parties will be directed to submit a status report advising the Court whether any issues remain for adjudication.

**IT IS THEREFORE ORDERED** that Plaintiff James River Insurance Co.'s Second Motion for Partial Summary Judgment and Brief in Support (Dkt. #101) is **granted**.

**IT IS FURTHER ORDERED** that the parties are directed to file a joint statement as to whether any issues remain for adjudication no later than **November 16, 2017**.

**DATED** this 9th day of November, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE